UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

DEBORAH BRAKEBILL,  )  No. EDCV 07-0118-RC
        ) 
    Plaintiff,  ) 
        ) 
    v.   )  OPINION AND ORDER
        ) 
MICHAEL J. ASTRUE,[1]  ) 
Commissioner of Social Security,  ) 
        ) 
    Defendant.  ) 
_____ ) 

Plaintiff Deborah Brakebill filed a complaint on January 31, 2007, seeking review of the Commissioner's decision denying her application for disability benefits. On June 25, 2007, the Commissioner answered the complaint, and the parties filed a joint stipulation on October 9, 2007.

## BACKGROUND

### I

On June 24, 2004, plaintiff applied for disability benefits under

---

[1] Pursuant to Fed. R. Civ. P. 25(d)(1), Michael J. Astrue is substituted as the defendant in the action.

Title II of the Social Security Act ("Act"), 42 U.S.C. § 423, claiming an inability to work since March 8, 2004, due to fibromyalgia. Certified Administrative Record ("A.R.") 50-52, 54. The plaintiff's application was initially denied on September 2, 2004, and was denied again on December 23, 2004, following reconsideration. A.R. 25-29, 34-39. The plaintiff then requested an administrative hearing, which was held before Administrative Law Judge F. Keith Varni ("the ALJ") on April 4, 2006. A.R. 40, 280-304. On June 8, 2006, the ALJ issued a decision finding plaintiff is not disabled. A.R. 14-22. The plaintiff appealed this decision to the Appeals Council, which denied review on December 5, 2006. A.R. 5-12.

## II

The plaintiff, who was born on May 16, 1956, is currently 52 years old. A.R. 50, 283. She is a high school graduate who studied medical assisting at a trade school, obtained an x-ray technician's license, and previously worked as a medical assistant. A.R. 55-56, 283-85.

On February 25, 2004, plaintiff's treating physician at the Riverside Medical Clinic,[2] C.M.T. Nguyen, M.D., diagnosed plaintiff as having depression and anxiety, among other conditions. A.R. 121. On June 2, 2004, Dr. Nguyen reported plaintiff's depression and anxiety were stable with medication. A.R. 185, 228. On October 20, 2004,

---

[2] Although plaintiff has both mental and physical complaints, she does not challenge the ALJ's assessment of her physical condition; therefore, the Court will not summarize the medical evidence regarding plaintiff's physical complaints.

plaintiff's treating rheumatologist, Andre Babajanians, M.D., diagnosed plaintiff with chronic depression, among other conditions, A.R. 176; however, on May 26, 2005, Dr. Babajanians reported plaintiff's depression had improved. A.R. 240.

On February 6, 2004, V. Chatsuthiphan, M.D., a psychiatrist, examined plaintiff at the Inland Psychiatric Medical Group, Inc. ("Inland"), diagnosed her with recurrent major depression and prescribed Trazodone and Zoloft[3] to plaintiff for those conditions, determined plaintiff's Global Assessment of Functioning ("GAF") was 48,[4] and opined plaintiff's mental condition had a "moderate" effect on her family relationships and a "severe" effect on her ability to work. A.R. 149-51, 206-08. Over the next few months, plaintiff received treatment at Inland, A.R. 146-48, 173, 195-205, and on June 25, 2004, Dr. Chatsuthiphan opined plaintiff's anxiety and depression were decreased and her GAF was then 56.[5] A.R. 204. On

---

[3] Trazodone, also called Desyrel, "is prescribed for the treatment of depression." The PDR Family Guide to Prescription Drugs, 198, 690 (8th ed. 2000). Zoloft "is prescribed for major depression — a persistently low mood that interferes with everyday living." Id. at 763.

[4] A GAF of 48 means that the plaintiff exhibits "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job)." American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed. (Text Revision) 2000).

[5] A GAF of 56 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." Diagnostic and Statistical Manual of Mental Disorders

3

October 29, 2004, Dr. Chatsuthiphan found plaintiff was doing well on her medications and her depression and anxiety were under control. A.R. 173, 202. On December 17, 2004, Dr. Chatsuthiphan found plaintiff's depression was under control with medication, but she was still complaining of anxiety. A.R. 202.

On January 14, 2005, Dr. Chatsuthiphan increased plaintiff's dosage of Zoloft, and on February 11, 2005, plaintiff was less depressed and anxious. A.R. 201. On March 11, 2005, Dr. Chatsuthiphan prescribed Xanax[6] to plaintiff, and on April 15, 2005, Dr. Chatsuthiphan noted plaintiff's anxiety and depression were decreased but she still needed Xanax for her panic; Dr. Chatsuthiphan also prescribed Effexor[7] to plaintiff. A.R. 200. On April 29, 2005, plaintiff stated she was doing much better, had less anxiety, panic and depression, and did not need to take the Xanax as often. A.R. 199. However, on July 1, 2005, plaintiff's anxiety increased and she complained of insomnia and headaches, which Dr. Chatsuthiphan treated by increasing her Trazodone. A.R. 198. On July 29, September 23, October 21 and December 23, 2005, Dr. Chatsuthiphan reported plaintiff

---

at 34.

[6] Xanax "is a tranquilizer used in the short-term relief of symptoms of anxiety or the treatment of anxiety disorders." The PDR Family Guide to Prescription Drugs at 742.

[7] "Effexor is prescribed for the treatment of depression — that is, a continuing depression that interferes with daily functioning. The symptoms usually include changes in appetite, sleep habits, and mind/body coordination, decreased sex drive, increased fatigue, feelings of guilt or worthlessness, difficulty concentrating, slowed thinking, and suicidal thoughts." The PDR Family Guide to Prescription Drugs at 237.

was feeling better and had less anxiety and depression. A.R. 196-98. However, on March 3 and March 10, 2006, Dr. Chatsuthiphan noted plaintiff needed help controlling her anxiety and depression because she was worried about her health and legal problems. A.R. 195.

On August 23, 2004, H.N. Hurwitz, M.D., a nonexamining psychiatrist, determined plaintiff has an affective disorder characterized by a "disturbance of mood, accompanied by a full or partial manic or depressive syndrome." A.R. 152-65. Dr. Hurwitz opined plaintiff has a "mild" restriction in her activities of daily living, "moderate" difficulty maintaining social functioning and concentration, persistence or pace, and she has experienced no episodes of decompensation. A.R. 162. Dr. Hurwitz further opined plaintiff is "moderately limited" in her ability to carry out detailed instructions, maintain attention and concentration for extended periods, make simple work-related decisions, interact appropriately with the general public, and set realistic goals or make plans independently of others, but, otherwise, is not significantly limited. A.R. 166-68. On December 9, 2004, K. Loomis, M.D., another nonexamining psychiatrist, reaffirmed Dr. Hurwitz's opinions and concluded plaintiff is capable of performing non-public simple repetitive tasks. A.R. 191, 193.

## DISCUSSION

### III

The Court, pursuant to 42 U.S.C. § 405(g), has the authority to review the Commissioner's decision denying plaintiff disability benefits to determine if his findings are supported by substantial

evidence and whether the Commissioner used the proper legal standards in reaching his decision. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007); Hoopai v. Astrue, 499 F.3d 1071, 1074 (9th Cir. 2007).

"In determining whether the Commissioner's findings are supported by substantial evidence, [this Court] must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001). "Where the evidence can reasonably support either affirming or reversing the decision, [this Court] may not substitute [its] judgment for that of the Commissioner." Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007), cert. denied, 128 S. Ct. 1068 (2008); Lingenfelter, 504 F.3d at 1035.

The claimant is "disabled" for the purpose of receiving benefits under the Act if she is unable to engage in any substantial gainful activity due to an impairment which has lasted, or is expected to last, for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). "The claimant bears the burden of establishing a prima facie case of disability." Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996); Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996).

The Commissioner has promulgated regulations establishing a five-step sequential evaluation process for the ALJ to follow in a disability case. 20 C.F.R. § 404.1520. In the **First Step**, the ALJ

must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If not, in the **Second Step**, the ALJ must determine whether the claimant has a severe impairment or combination of impairments significantly limiting her from performing basic work activities. 20 C.F.R. § 404.1520(c). If so, in the **Third Step**, the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments, 20 C.F.R. § 404, Subpart P, App. 1. 20 C.F.R. § 404.1520(d). If not, in the **Fourth Step**, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform her past work. 20 C.F.R. § 404.1520(f). If not, in **Step Five**, the burden shifts to the Commissioner to show the claimant can perform other work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1520(g).

Moreover, where there is evidence of a mental impairment that may prevent a claimant from working, the Commissioner has supplemented the five-step sequential evaluation process with additional regulations addressing mental impairments. <u>Maier v. Comm'r of the Soc. Sec. Admin.</u>, 154 F.3d 913, 914 (9th Cir. 1998) (per curiam). First, the ALJ must determine the presence or absence of certain medical findings relevant to the ability to work. 20 C.F.R. § 404.1520a(b)(1). Second, when the claimant establishes these medical findings, the ALJ must rate the degree of functional loss resulting from the impairment by considering four areas of function: (a) activities of daily living; (b) social functioning; (c) concentration, persistence, or pace; and (d) episodes of decompensation. 20 C.F.R. § 404.1520a(c)(2-4).

Third, after rating the degree of loss, the ALJ must determine whether the claimant has a severe mental impairment. 20 C.F.R. § 404.1520a(d). Fourth, when a mental impairment is found to be severe, the ALJ must determine if it meets or equals a Listing. 20 C.F.R. § 404.1520a(d)(2). Finally, if a Listing is not met, the ALJ must then perform a residual functional capacity assessment, and the ALJ's decision "must incorporate the pertinent findings and conclusions" regarding plaintiff's mental impairment, including "a specific finding as to the degree of limitation in each of the functional areas described in [§ 404.1520a(c)(3)]." 20 C.F.R. § 404.1520a(d)(3), (e)(2).

Applying the five-step sequential evaluation process, the ALJ found plaintiff has not engaged in substantial gainful activity since March 8, 2004. (Step One). The ALJ then found plaintiff has the severe impairments of fibromyalgia and right carpal tunnel system syndrome, but she does not have a severe mental impairment (Step Two) or an impairment or combination of impairments that meets or equals a listed impairment. (Step Three). Finally, the ALJ determined plaintiff is able to perform her past relevant work as a medical assistant; therefore she is not disabled. (Step Four).

### IV

The Step Two inquiry is "a de minimis screening device to dispose of groundless claims." Smolen, 80 F.3d at 1290; Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005). The Supreme Court has recognized that including a severity requirement at Step Two of the sequential evaluation process "increases the efficiency and reliability of the

evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." Bowen v. Yuckert, 482 U.S. 137, 153, 107 S. Ct. 2287, 2297, 96 L. Ed. 2d 119 (1987). However, an overly stringent application of the severity requirement violates the Act by denying benefits to claimants who meet the statutory definition of disabled. Corrao v. Shalala, 20 F.3d 943, 949 (9th Cir. 1994).

A severe impairment or combination of impairments within the meaning of Step Two exists when there is more than a minimal effect on an individual's ability to do basic work activities. 20 C.F.R. § 404.1521(a); Webb, 433 F.3d at 686; Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001). Basic work activities are "the abilities and aptitudes necessary to do most jobs," including physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling, as well as the capacity for seeing, hearing and speaking, understanding, carrying out, and remembering simple instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations, and dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b); Webb, 433 F.3d at 686. If the claimant meets her burden of demonstrating she suffers from an impairment affecting her ability to perform basic work activities, "the ALJ *must* find that the impairment is 'severe' and move to the next step in the SSA's five-step process." Edlund v. Massanari, 253 F.3d 1152, 1160 (9th Cir. 2001) (emphasis in original); Webb, 433 F.3d at 686.

//

In Step Two, the ALJ found plaintiff does not have a severe mental impairment. The plaintiff, however, contends the ALJ's Step Two finding is not supported by substantial evidence because the ALJ improperly rejected the opinions of nonexamining psychiatrist Dr. Hurwitz. There is no merit to plaintiff's contention.

"The [ALJ] may reject the opinion of a nonexamining physician by reference to specific evidence in the medical record." Sousa v. Callahan, 143 F.3d 1240, 1244 (9th Cir. 1998). However, while "not bound by findings made by State agency or other program physicians and psychologists, [the ALJs] may not ignore these opinions and must explain the weight given to the opinions in their decisions." S.S.R. 96-6p, 1996 WL 374180, *2 (S.S.A.); 20 C.F.R. §§ 404.1527(f), 416.9279(f); see also Haynes v. Barnhart, 416 F.3d 621, 630 (7th Cir. 2005) ("[T]he regulations require an ALJ to consider opinions offered by medical experts, [but] an ALJ is not bound by those opinions and must evaluate them in the context of the expert's medical specialty and expertise, supporting evidence in the record, and other explanations regarding the opinion.").

Here, the ALJ found plaintiff does not have a severe mental impairment, and rejected Dr. Hurwitz's opinions, stating:

> The mental health records reflect continuing improvement with the minimal regimen of treatment. There is no credible evidence of any restrictions of the [plaintiff's] activities of daily living, or that she has an inability to relate to people, given the fact that she is able to mingle among

>crowds of people when she frequents gambling casinos. There is no evidence of diminished concentration, persistence or pace. Certainly, there is no evidence of withdrawal behavior.

A.R. 21-22. Additionally, the ALJ found plaintiff "has never been hospitalized for mental reasons, and [her] treatment has . . . been minimal and very conservative." A.R. 22.

The ALJ's findings are "clearly established by [the] medical evidence," Webb, 433 F.3d at 687, which shows that plaintiff's depression and anxiety rapidly improved after she was prescribed medication on February 6, 2004, and further shows that by October 29, 2004, plaintiff's conditions were under control. A.R. 173, 185, 202, 228. Thereafter, plaintiff continued to do well on medication, with mild fluctuations in her conditions, and no evidence of any significant impairment in her mental ability to do basic work activities. A.R. 195-202. Thus, the medical evidence clearly supports the ALJ's rejection of Dr. Hurwitz's opinions, Sousa, 143 F.3d at 1244, as well as the ALJ's Step Two determination that plaintiff does not have a severe mental impairment. See Warre v. Comm'r of the Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for [Social Security] benefits[,]"); Montijo v. Sec. of Health & Human Servs., 729 F.2d 599, 600-01 (9th Cir. 1984) (per curiam) (no severe impairment where claimant's condition controlled with medication); Odle v. Heckler, 707 F.2d 439, 440 (9th Cir. 1983) (impairment that can be

reasonably controlled with medication cannot support a disability finding).

**ORDER**

IT IS ORDERED that: (1) plaintiff's request for relief is denied; and (2) the Commissioner's decision is affirmed, and Judgment shall be entered in favor of defendant.

DATE: July 24, 2008

ROSALYN M. CHAPMAN
UNITED STATES MAGISTRATE JUDGE

R&R-MDO\07-0118.mdo
7/24/08